The fourth argument this morning is Hill v. FedEx. Good morning. My name is Christopher Cooper. Counsel, I will call your name when we're ready to hear you. We always allow opposing counsel to find a seat. Mr. Cooper. Good morning. Once again, my name is Christopher Cooper. I represent Plaintiff Hill, who is sitting in the back on my right. I want to make three points, if I may. First, it's plaintiff's position that she did suffer an adverse employment action. Second, that there are material issues in dispute. And third, it's plaintiff's position that she can demonstrate that FedEx's proffered reason, for delaying her GFTP, was pretextual in nature. And I want to point to Forrester, specifically at pages 417 and 418. And my take of Forrester is simply this. This court said a trier of fact could infer a discriminatory motive from a proffered non-discriminatory reason by looking to the character of the non-discriminatory reason. If the character of the non-discriminatory reason is insufficiently weighty, then plaintiff has been able to show pretext. Federal Express asserts we delayed, we as in Federal Express or it, delayed Ms. Hill's GFTP because it needed to conduct an investigation. It's plaintiff's position that that reason is insufficiently weighty. Federal Express could have engaged in the GFTP process, that is, heard the grievance, concurrent with also investigating the EEO complaint. Federal Express at some point, I don't know exactly when, perhaps October 2012, when the EEOC said, Federal Express, you can't do this, this is a violation of the law. Federal Express did away with the deferment policy. Now here's what we know. Because I'm not asking the court in any way to hit Federal Express over the head for doing away with the policy. I know that that's not possible. But here's what I do know. Since approximately October 2012, Federal Express has been able, without a hitch, to conduct EEO investigations contemporaneous with allowing a GFT to go forward. It's feasible. So when Federal Express says prior to October 2012, we could not do both, therefore, believe us, Seventh Circuit, we were in no way violating Ms. Hill's rights, I'm saying Federal Express was wrong. And it's wrong now when it asserts that it was right then. I want to call attention to Humphrey, specifically at 407. So this court said in Humphrey's at 407, that a lack of investigation may, and I'm using the word may because you certainly didn't say shall, may be indicative of pretext. That if you didn't do an investigation, if you didn't look into matters, and then you say, well, you know, we really didn't mean to hurt anyone and we did not discriminate, well, who should believe that? And that's a basis to allow this case to go to a jury. Focusing on Coleman v. Donahoe at 841, the Coleman court tells us this. If Hill can show that her comparators, and her comparators can be found in Plaintiff's Exhibit 10. Exhibit 10 is a list of people at Federal Express who sought to use the GFT, but they did not file a complaint of racial discrimination. They were allowed to use the GFT. So from Coleman, and this is my interpretation of Coleman, the same evidence that makes for Hill's prima facie case can also be used to show that Federal Express's proper reason is not true, it's not correct. You're in your rebuttal time, you know. I wasn't aware I was talking that fast. I'll have a seat unless someone has a question. Okay, thank you. Thank you, Mr. Cooper. Ms. Fogarty. Thank you. May it please the court opposing counsel, my name is Whitney Fogarty, and I'm here on behalf of FedEx. There is only one question that is before this court today, and that question is, did FedEx unlawfully retaliate against Letitia Hill personally when it made a decision to apply a policy that had been in place for years, and to defer its investigation into her internal complaint that the decision to terminate her employment was unfair, so that it could first thoroughly, through a separate process, investigate her internal complaint that that decision was also discriminatory? In other words, did FedEx unlawfully retaliate against Letitia Hill when it made a business decision several years earlier to prioritize investigations into alleged unlawful conduct over investigations into unfairness? Now, the Supreme Court is clear that in order for an act to constitute unlawful retaliation, it must be materially adverse. That means it must produce injury or harm to the plaintiff, and there must be evidence of retaliatory intent. The district court correctly held that there is no evidence of either element in this case, and therefore the district court properly awarded some re-judgment to FedEx. Now, before I talk in greater detail about the material adverse requirement and retaliatory intent, I want to take just a moment to briefly explain the two processes and policies at FedEx that are at play. FedEx offers its employees a number of different ways through which they can register complaints regarding their employment. One of them is through the internal EEO process. That's a one-step investigatory process that is designed specifically to address allegations of discrimination and harassment. That process is overseen by human resources and the legal department. A second avenue through which employees can register complaints is through, as Mr. Cooper referred to it, the GFT procedure. It's known as the Guaranteed Fair Treatment procedure. That's a process through which employees can register complaints that employment decisions are not fair, are not consistent under FedEx policy. It's an entirely separate process from the internal EEO process. The GFT is a three-step investigatory process, and the decision-makers, although they receive support from human resources, the decision-makers are individuals in the complaining employee's management chain. Now, when an employee chooses to initiate both procedures, as Ms. Hill did in this case, FedEx made a decision, a business decision, based on its available resources, to prioritize one investigation over the other. And because FedEx takes allegations of discrimination, harassment, and retaliation seriously and is aware of its obligation to investigate those claims under the law, it chose to prioritize the investigation into allegations of discrimination and harassment over allegations of fairness. Now, that's exactly what happened to Ms. Hill in this case. As I mentioned, her employment was terminated. She challenged that decision first through the GFT procedure, claiming, I shouldn't have been terminated under a FedEx policy because I didn't do the act that you claimed that I did. And then in step one of that GFT procedure, she also made internal allegations of discrimination and harassment. At that point, in accordance with its policy, FedEx deferred its investigation into the fairness complaint so that it could first take a look at whether or not unlawful discrimination or harassment tainted the decision. As soon as that investigation into the discrimination was complete, the investigation into the fairness piece of it resumed and was completed at all three steps. Now, Ms. Hill takes issue with the district court's conclusion that that deferral was not materially adverse. As I mentioned at the beginning, in order for an act to be materially adverse, it must produce injury or harm. The Supreme Court in Burlington Northern v. White cautioned that the anti-retaliation provision protects individuals not from all retaliation, but from retaliation that produces injury or harm. If there is no injury or harm, then a reasonable worker would not have been dissuaded from making or supporting a charge of discrimination. In this case, there is absolutely no evidence in the record of injury or harm. Ms. Hill stipulated during discovery that she's not seeking to recover for mental distress or emotional distress damages, and there's no evidence of any actual economic harm to her. She suggested in her brief that she, for example, lost pay, but that loss of pay was the result of the termination decision, not the deferral decision, and the termination decision is not at issue in this appeal. She would have lost her pay, or she did lose her pay, as a result of the termination decision, and that loss of pay occurred regardless of whether or not the GFT process was deferred. Now, Ms. Hill also takes issue with the district court's conclusion that there's no evidence of retaliatory intent. Intent is incorporated into both the direct and indirect methods of proving retaliation. It's in the causation element under the direct method and the pretext analysis under the indirect method. What Ms. Hill argues is that protected activity plus differential treatment automatically equals retaliation. Well, that's not the law. There are two flaws in that argument. First, she has entirely removed intent from the equation, and perhaps that's because the record is clear about the intent or the purpose behind the deferral. It's spelled out in the policy. The purpose for the deferral is to allow FedEx to first use its resources to investigate those allegations of unlawful conduct. Now, Mr. Cooper made reference to the lack of an investigation. He did not raise that issue or challenge the investigation below, but I would submit there is proof in the record that an investigation did, in fact, occur. There's evidence in the record that when she raised the allegation of discrimination, FedEx asked her to complete an employee information statement. There's testimony that during the deferral period, an investigation that involved the interview of witnesses occurred, and then there is proof in the record that when the investigation was complete into those allegations of discrimination and harassment, Ms. Hill received notice of the completion. She was advised that no policy violations were found, and then the GFT process resumed. The other flaw in Appellant's argument that protected activity plus differential treatment equals retaliation is that not all differential treatment is suggestive of retaliatory intent. There must be evidence of less favorable treatment, and in this case there is no evidence that Ms. Hill was treated less favorably than any other employee. In fact, it's FedEx's position that she was actually treated better. She invoked both processes. She had two opportunities through which she could challenge the decision to terminate her employment. She had two opportunities to obtain the remedy sought, which was reinstatement. It's important to note that she could have been reinstated at any point during either process if a violation of law or policy had been found. My opposing counsel also mentioned a minute ago that he referred to an EEOC decision. I would submit that that EEOC decision is not properly before this court, not something that this court could consider. It was not issued in connection with Ms. Hill's charge of discrimination filed to the EEOC. It was issued in connection with a third party, and it was also issued before the Supreme Court's recent decision in Nassar in which the Supreme Court rejected the retaliation standard that was being used by the EEOC at the time. I would also like to make one other point regarding the district court's opinion. The district court concluded that under the indirect method of proof, Ms. Hill had failed to establish each element of a prima facie case. Now, Appellant did not address each element of the prima facie case in her brief. In fact, she put the pretext cart before the prima facie horse. I would rest on our... Because she did not do that, I would rest on our argument in the brief with regard to the prima facie case. In conclusion, Your Honors, what Ms. Hill is asking this court to do is to punish FedEx because FedEx made a business decision based on its resources to prioritize investigations into discrimination and harassment over investigations of fairness. Now, whether or not Mr. Cooper mentioned that we could run these investigations simultaneously, and we are doing it now or we're not doing it now, the proof in the record on that point is not clear, but it doesn't matter. That's a business decision that FedEx makes based on how to appropriately allocate its resources, and the law is clear that courts do not second-guess the business decisions of corporations. So again, in conclusion... Is that the current policy as well? I'm sorry, Your Honor? The two times... Is the policy the same as it was when... I believe the language of the policy is actually the same, but in practice there is an effort to try to run them concurrently, but there's no evidence in the record as to whether or not that shortens either process because there is an overlap of resources with our Human Resources Department being involved in both decisions. So in conclusion, Your Honors, I would ask that the court affirm... Yes, thank you, Counsel. Thank you. Anything further, Mr. Cooper? Yes, Your Honor. Federal Express's 30B6 witness is asked at her deposition, is it your testimony that her process, reference to Hill, was stopped on or about August 19, 2010 because she filed a complaint of racial discrimination? Answer, yes.  prior to Plessy were denoted as for good business reasons. Federal Express cannot stand here today and say that it had a good business reason for treating people differently because they complained of racial discrimination. Just racing through the points that I think need a response, a warranted response. There is no evidence in the record that an investigation ever occurred. We asked for it and we didn't get it. As to injury and harm, the evidence is there. It's in the record. The point that seems to be creating some havoc is whether or not you can suffer the injury after you've left the employ of, in this case, Federal Express. So Ms. Hill is saying, I was out for approximately 112 days. Had I not filed a complaint of racial discrimination, I would have been out for perhaps 45 days. It is necessary to consider what happened in those 112 days. Would a reasonable employer hire Ms. Hill if Ms. Hill is honest in saying, I may go back to Federal Express, would a reasonable employer spend the money and time to train Hill knowing that Hill may go back to Federal Express? Mr. Gomez did go back to Federal Express. It's 12CV6108. Gomez and Rios need to be considered by this court in looking at Hill for two reasons, tab A and B of plaintiff's reply brief. Federal Express has told at least four different stories of why it defers GFTs. In tab A is Federal Express's explanation to the United States, specifically to the EEOC, which essentially bodes with what it's saying here today. In tab B of the reply brief, Federal Express asserts, well, the employee did not participate. The employee did not participate in the internal EEO process, but the employee made a decision to go to the EEOC and to IDHR, Illinois Department of Human Rights. I got it. Thank you very much, Counselor. Thank you. The case is taken under advisement.